```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                     NORTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,     )
                                   )
 5            vs.                  )   CRIMINAL CASE NO.
                                   )   1:25-cr-00176-JKB-1
 6   JACK AMADEUS LASOTA           )

 7

 8                 MONDAY, NOVEMBER 25, 2025
                         Courtroom 7B
 9                    Baltimore, Maryland

10          INITIAL APPEARANCE/ARRAIGNMENT HEARING

11       BEFORE:  THE HONORABLE DOUGLAS R. MILLER, Judge

12   On Behalf of the United States:

13       JARED BEIM, ESQUIRE
             Office of the United States Attorney
14           36 South Charles Street
             Baltimore, MD 21201
15
     On Behalf of the Defendant:
16
         GARY E. PROCTOR, ESQUIRE
17           Law Office of Gary E. Proctor
             233 East Redwood Street, Suite 1000C
18           Baltimore, MD 21202

19   Also Present:

20       MELISSA MCGUINNESS, U.S. Pretrial Services
         ROBERT MORRIS, Special Agent FBI
21   ─────────────────────────────────────────────────
                Proceedings Recorded by Audio Recording
22       Transcript Produced by Computer-Aided Transcription

23         Reported by:  Kassandra L. McPherson, RPR
                  Federal Official Court Reporter
24             101 W. Lombard Street, 4th Floor
                    Baltimore, MD 21201
25                    (410) 962-4544
```

```
 1                     P R O C E E D I N G
                         11:43 a.m.
 2

 3       (Court called to order.)

 4            MR. BEIM:  Good morning.  Calling the case of the

 5  United States v. Jack Amadeus LaSota, criminal number

 6  JKB-25-176.  Jared Beim and Tom Sullivan, Assistant United

 7  States Attorneys, on behalf of the Government.  Also joined at

 8  counsel table by FBI Special Agent Robert Morris.  And we are

 9  here for an initial appearance and arraignment.

10            THE COURT:  Thank you.  Very good.  You may be seated.

11       And Mr. Proctor.

12            MR. PROCTOR:  Good morning, Your Honor.  My name is

13  Gary Proctor, I represent Miss LaSota.  I was previously

14  appointed by (indiscernible).

15            THE COURT:  Very good.  Good morning, Miss LaSota, how

16  are you today?  I'll take that as a fine.  Good morning to you.

17  Good morning to you.

18       And good morning to Officer McGuinness from Pretrial.

19       Okay.  We are here today because a grand jury of this court

20  has returned an indictment.  An indictment is a charging

21  document, and in it the government has made allegations

22  regarding certain violations of federal law.

23       We are here for your initial appearance today, so this is

24  not your trial.  The purpose of today's proceeding, rather, is

25  for me to give you more information about what the government
```

1  alleges, for me to advise you of the maximum possible penalties

2  if the government were to prove its case.

3          I will advise you of some important constitutional rights

4  that you have, and we'll also discuss your representation with

5  counsel, briefly, and then we will discuss your release or

6  detention pending your next court appearance.  Although, I think

7  I see an order of detention by agreement.  I'll come to that.

8          Let me stop now, Miss LaSota, and just ask, have you been

9  able to hear me okay and have you been able to understand

10 everything that I've been saying?

11              THE DEFENDANT:  I can hear you.

12              THE COURT:  All right.  So I'm glad that you can hear

13 me.  Well, let me ask this question a different way.  Is there

14 anything that would impair your ability to understand the

15 proceedings today?  So that could be medication, drugs, alcohol,

16 any kind of medical condition, anything at all?

17              THE DEFENDANT:  It is not as easy, as might be

18 supposed to understand, a mock proceeding conducted by an

19 organized crime ring such as the States United in Slavery.

20              THE COURT:  Putting aside any opinions or beliefs that

21 you might have about the authority of this court or the United

22 States as a political entity, you speak and understand the

23 English language, I can tell, and your response to me indicates,

24 at least, that you understand the words that I am saying.

25          Beyond your philosophical or political disagreement with

1  this proceeding, is there anything, for want of a better word,

2  processing-wise, whether it's a mental or physical condition,

3  drugs, alcohol, medications, anything I mentioned, that would

4  prevent you from understanding and responding today?

5           THE DEFENDANT:  As I was saying, as a participant in

6  an organized crime ring, I don't always know when you ask me a

7  question like that whether -- whether there's some kind of

8  meaning that's intended to be smuggled along, and that is an

9  impediment to understanding what you're saying.

10           THE COURT:  Okay.  I'm going to interpret Miss

11  LaSota's response as meaning that she did understand the content

12  of what I was saying, because I don't think her -- I think her

13  response tracks reasonably well.  I trust Mr. Proctor, who is an

14  experienced member of our CJA panel, to spot any issues

15  potentially related to competency.

16      I'm going to go forward today with the proceedings as they

17  are.  If there is any issue raised that Miss LaSota didn't

18  understand what was happening today, we can have another initial

19  appearance, I suppose, at some point, or cover these things.

20  But I'm going to move forward today because I'm not -- I'm not

21  directly getting an answer suggestive that Miss LaSota can't

22  hear me, can't understand English, feels there's some way that

23  she can't understand the language.

24      So I will go forward with that caveat, and obviously, I'll

25  rely on Mr. Proctor to relay any issues, or indeed, if the

 1   Government has any concerns about competency, of course, it

 2   knows how to raise those.

 3          All right.  Let me ask you, Miss LaSota, if have you

 4   received and reviewed a copy of the indictment in this case.

 5                THE DEFENDANT:  I read this.

 6                THE COURT:  Okay.  And I can see, from a distance at

 7   least, that what Miss LaSota is holding up appears to be the

 8   indictment in this case, so I'll take that as a yes.

 9          So Miss LaSota, you are charged in Count 1, the sole count

10   of the indictment, with possession of firearms and ammunition by

11   a fugitive from justice.  That would be in violation of 18

12   United States Code § 922(g)(2).

13          And if the government were to prove its case, the maximum

14   penalty you could receive is as follows:

15          Incarceration for up to no more than 15 years;

16          I believe a fine of $250,000.  Government can correct me if

17   I'm wrong on any of these because it's not on the sheet.

18   $250,000; is that correct?

19                MR. BEIM:  That's right, Your Honor.

20                THE COURT:  All right.  And supervised release for up

21   to three years, and then a special assessment of up to $100.

22          Do I have all that right, from the Government's

23   perspective?

24                MR. PROCTOR:  Yes, Your Honor.

25                THE COURT:  Okay.  Very good.  All right.

 1          So, Miss LaSota, those are the maximum penalties; in other

 2   words, the worst case scenario.  They are certainly not the

 3   sentence that you would receive -- necessarily receive if

 4   convicted.

 5          So I'm not asking you whether you agree with these charges,

 6   of course, but I'm just asking do you understand the nature of

 7   the charges against you and the maximum penalties that you could

 8   face?

 9               THE DEFENDANT:  Well, I presume that the charges mean

10   to misrepresent the States United in Slavery and their

11   enforcement operations, pursuant to their racket, which has

12   laundered their slaving operations and other criminal activity

13   through other means as justice.  But there are some other things

14   about this document which confuse me.

15               THE COURT:  Okay.  Well, let's -- let's address those.

16   But I want to start from the beginning to make sure you

17   understand what the charges are.

18          So to begin with, Congress has passed a law, 18 United

19   States Code § 922(g)(2), as part of the Gun Control Act.  And it

20   prohibits certain categories of people from possessing firearms

21   and ammunition.  And one category of such people is what are

22   defined broadly as fugitives from justice.  And so the

23   allegation here is that on a certain date, that's February 16th,

24   2025, in the District of Maryland, you had that status; you were

25   a fugitive from justice and you knowingly -- allegedly,

```
 1   knowingly possessed firearms and ammunition.  And then there's a

 2   list of the firearms and ammunition that the grand jury is

 3   saying that you possessed.  And if those things are all true, if

 4   the Government could prove it beyond a reasonable doubt, then

 5   you would be guilty of that offense.

 6        So let's start with that.  Is there anything about that you

 7   don't understand?

 8            THE DEFENDANT:  Well, there are a lot of terms that --

 9   there are a lot of meanings that members of the racket, which

10   you represent, have connected to a pretense of a legal system.

11   And you say certain categories of people.  I know from news

12   broadcasts, under this very regime, that your -- that your

13   government is currently going around scooping up brown people

14   and -- and -- and disappearing them.  They say that they're

15   being deported but --

16            THE COURT:  Well, let me stop you there.  I -- I -- I

17   understand the news reports that you're referring to.  There is

18   -- there is no allegation here that you are anything other than

19   a United States citizen, so any portion of the Gun Control Act

20   that applies based on --

21            THE DEFENDANT:  I'm transgender.  And the intentions

22   of this regime towards transgender people are very clear, which

23   is to say genocide.

24            THE COURT:  All right.  So I'm going to take -- again,

25   you know, Mr. Proctor, I rely on you to address any issues to
```

```
 1    the contrary here, but I'm going to take Mr. -- or rather Miss
 2    LaSota's response to my question as indicating that she did
 3    understand the semantic content of what I said.  That she
 4    understands that there are laws that apply to people, and that
 5    the law -- the law that she's alleged to have violated is one
 6    that would prevent a felon, or a fugitive from justice, rather,
 7    from possessing firearms, and that the grand jury has alleged
 8    that she's done that on a certain date.
 9         I understand that she has disagreements with the United
10    States and political policy, but I take her response to mean
11    that she does understand the nature of what she is charged with.
12              THE DEFENDANT:  Am I to understand correctly that that
13    is -- you're describing me as a fugitive because I'm a
14    transgender and the intention would be to --
15              THE COURT:  No.  To be clear, I'm not describing you
16    as anything.  The grand jury has found, by probable cause, that
17    you fell into the class fugitive from justice.  Typically, that
18    means a person who is charged with or wanted for a crime in one
19    place and is on the run or just hasn't turned themselves in or
20    hasn't been arrested.  It could be a lot of categories.  It has
21    nothing to do with a person's gender identity.
22              THE DEFENDANT:  So you would agree that by justice you
23    don't mean exactly justice itself as opposed to -- as like -- as
24    a moral concept, you mean something that has been invented by
25    democratic representation of consensus, right?
```

1    THE COURT:  This -- this type of philosophizing is,
2  perhaps, beyond the scope of our initial appearance here today.
3  And I'm going to say, Miss LaSota's response clearly indicates
4  that she understands that we are in the middle of a criminal
5  proceeding and what the charges are, or at least the type of
6  charges.  Again, if there is an issue with her competency, I'm
7  sure, anyone, government or defense can raise that, but I'm
8  going to move forward.

9    Miss LaSota, there's also a forfeiture allegation in the
10  indictment.  The forfeiture allegation states, generally, that
11  if you were convicted of the offense you are charged with, the
12  government would seek to forfeit the firearms and ammunition
13  that are charged in the indictment.  They are listed here, but
14  essentially, the government would attempt to take that property
15  to become the property of the government and no longer your
16  property.  There's also a substitute assets provision, which
17  states that, essentially, if the property listed can't be
18  located the government could take substitute assets.

19    Again, do you understand, generally, that the government
20  can forfeit certain assets if you're convicted in a criminal
21  case?

22    THE DEFENDANT:  When you say can, are you referring to
23  -- to legality?

24    THE COURT:  I'm specifically referring to legality,
25  yes.

1          THE DEFENDANT:  No, that's not legal.

2          THE COURT:  Okay.  So I, again, take Ms. LaSota's

3   answer to mean that she understands, because if she's capable of

4   distinguishing between whether something is legal or not legal

5   when we're talking about forfeiture, she may dispute whether

6   forfeiture is valid or not, but she understands that it's a

7   thing that exists under the law and is charged in the

8   indictment.  So I will move on.

9          So, Miss LaSota, you have two very important constitutional

10  rights at issue today.  First, is that under the Fifth Amendment

11  you have the right to remain silent.  You don't have to make any

12  statement about these charges.  Anything you do say could be

13  used against you in court.

14         And then under the Sixth Amendment you have the right to an

15  attorney.  You have the right to be represented by an attorney

16  at all stages of the proceeding.  And what that means is, is

17  that you have the right to your counsel not only with you here

18  in court, like today, but also any time the government would

19  seek to question you about these charges you have the right to

20  have counsel with you at that point as well.

21         There are two ways to obtain an attorney.  One way is to

22  use your own resources, hire an attorney of your choice.  The

23  second is for the court to appoint an attorney for you at no

24  cost if you cannot afford to hire one.  It's my understanding

25  that that's already what's happened here.

1    But just to clarify, do you understand both your right to

2  remain silent and your right to an attorney?

3         THE DEFENDANT:  Could you please read the Sixth

4  Amendment to me?

5         THE COURT:  I don't think this proceeding requires me

6  to read the exact text of the Sixth Amendment.  It's a rather

7  long amendment.  The important part of the Sixth Amendment is

8  that you have the right to counsel.  Subsequent decisions by the

9  court, by the Supreme Court, have determined that you have the

10 right to appointed counsel if you're found to be indigent.  And

11 my understanding is that's what happened in this case.

12        THE DEFENDANT:  It's not that long, is it?  I mean,

13 what you said on the topic is probably already longer.

14        THE COURT:  That's an interesting question.  However,

15 I'm going to take from Miss LaSota's response that she is aware

16 that the Sixth Amendment is something that exists in words, and

17 can be read and includes what I just described, which is, of

18 course, the essential part of the Sixth Amendment relevant here,

19 which is that she has the right to counsel.  Not only to have

20 counsel but to have appointed counsel, which comes, of course,

21 from both the text of the Sixth Amendment and subsequent Supreme

22 Court law.

23    Now, do you understand your rights to remain silent and

24 your right to counsel?

25        THE DEFENDANT:  Well, my right to remain silent is the

1  right to inaction, which, of course, your racket has aggressed

2  upon at numerous times.

3      I don't exactly understand what you might be suggesting

4  about what you might like various people to falsely believe

5  about any false promises to respect my rights.  But -- and

6  neither do I intend to inverse your misrepresentations of what

7  I've said.

8      Was there anything else?

9          THE COURT:  Again, I'm going to take from Miss

10  LaSota's answer that she understands both the Fifth and the

11  Sixth Amendment right to counsel, even if she believes, rightly

12  or wrongly, that sometimes those are not honored.  All right.

13      It is my understanding, Mr. Proctor, you have already been

14  appointed, correct, so I don't need to conduct a financial

15  inquiry; is that right?

16          MR. PROCTOR:  Yeah.  I was appointed in early August,

17  Your Honor.  It was ECF Number 2.

18          THE COURT:  Okay.  Very good.  Very good.  All right.

19      Let me move to the Government.  As is required by Rule

20  5(f), the United States is ordered to produce all exculpatory

21  evidence to the defendant, pursuant to Brady versus Maryland,

22  and its progeny.  Not doing so in a timely manner may result in

23  sanctions, including the exclusion of evidence, adverse jury

24  instructions, dismissal of charges, contempt proceedings,

25  vacating a conviction, or disciplinary action against the

 1   prosecution.  I will also -- I will sign a written order to that

 2   same effect.

 3        All right.  Now, this is -- I see an order of detention by

 4   agreement.  So I take it from that the Government is seeking

 5   detention?

 6             MR. BEIM:  Yes, Your Honor.

 7             THE COURT:  All right.  Miss LaSota, in certain

 8   categories of cases, including ones involving alleged possession

 9   of a firearm, the government may seek detention under the Bail

10   Reform Act.  You, certainly, have the right to a detention

11   hearing in which I or another judge would make a determination

12   about whether you could be released on conditions.  However, I

13   understand that are you agreeing to detention today.  However,

14   at any time in the future, should you change your mind, should

15   your situation change, simply let Mr. Proctor know that you

16   would like a hearing and the Court can schedule one promptly.

17             THE DEFENDANT:  I am not agreeing to detention, but

18   neither do I wish to subject myself to a hearing on that topic

19   under this court.  As I understand it, you would not be

20   discussing releasing me, you would be discussing detaining me.

21   I mean, what I'm trying to say is that I'm already detained.

22             THE COURT:  Mr. Proctor, I take it --

23             MR. PROCTOR:  My client is held without bail for

24   Allegany-related state charges and so we'd be consenting at this

25   point.  Obviously, if Allegany was to go away, get resolved, we

 1   would promptly be back before this court.  But --

 2           THE COURT:  Well, I understand the posture.  The issue

 3   is -- I mean, look, I can proceed in one of two ways here.  If

 4   Miss LaSota indicates that she's consenting to detention, then I

 5   can sign this order.  If she indicates contrary to what you are

 6   saying, that she's not consenting to detention but simply won't

 7   submit to a hearing, then I think what I have to do is I have to

 8   have the government put on -- because the government has the

 9   burden, right.  So I think I would have to have the government

10   put on their evidence.  And then, if you chose not to put any

11   evidence on in response, I would have to make a determination of

12   whether the government had met the threshold for detention.

13       So do you want to confer with Miss LaSota as to whether she

14   is consenting to detention or simply not going to raise an

15   opposition to the Government's evidence?

16           MR. PROCTOR:  Sure.

17           THE COURT:  Thank you.

18       (Off-the-record discussion between defendant and counsel.)

19           MR. PROCTOR:  Your Honor --

20           THE COURT:  Sir.

21           MR. PROCTOR:  -- after conferring, Miss LaSota -- Miss

22   LaSota will no doubt correct me if I'm wrong, but our request is

23   that we do not have a detention hearing at this time.

24           THE COURT:  All right.  I am going to interpret that

25   as Miss LaSota is consenting to detention.  And if anyone wants

 1  to correct me in that they can, but otherwise I'm going to go

 2  ahead and sign the order of detention by agreement.

 3       All right.  Are there -- well, I'll ask that

 4  prophylactically.  Are there any medical issues that I should

 5  know about if, in fact, Ms. LaSota winds up in federal custody?

 6  Do you want to submit something now or do you want to hold off

 7  until -- since I understand she's in Allegany.

 8            MR. PROCTOR:  Yeah.  Correct, Your Honor.  I have, of

 9  course, the electronic medical order.  In the event I learn that

10  my client is likely to proceed to federal detention any time

11  soon, I would, of course, fill it in, provide it to chambers,

12  copy the marshals, et cetera.

13            THE COURT:  That's perfect.  You can certainly apply

14  -- send it to chambers later.

15       So now my understanding is that we are going to move on now

16  to an arraignment; is that correct?

17            MR. BEIM:  Yes, Your Honor.

18            MR. PROCTOR:  Yes, sir.

19            THE COURT:  All right.  Very good.  Okay.

20       So -- all right.  So Miss LaSota, we're now moving on to

21  your arraignment on the same indictment that we have just gone

22  over.  An arraignment is simply your opportunity to enter a plea

23  in response to the indictment.

24       And I'll just ask, Mr. Proctor, have you reviewed the

25  indictment with Miss LaSota?

```
 1                MR. PROCTOR:  Yes, sir.

 2                THE COURT:  All right.  Do you waive a formal reading?

 3                MR. PROCTOR:  I do.

 4                THE COURT:  Miss LaSota, could you please stand and

 5      respond to the questions that our Courtroom Deputy, Ms. Davis,

 6      will ask you.

 7           Miss LaSota, it's generally considered, as the judge I

 8      allow people to remain seated.  But when you're addressing the

 9      courtroom deputy it's generally considered to be polite to

10      stand.  And it's also a way, too, of indicating that you

11      understand the importance and the truth of what you're saying,

12      so I would request that you stand.

13                THE DEFENDANT:  I -- I don't feel that such a veneer

14      of amicability would be warranted in this case.

15                THE COURT:  Here's the thing, Miss LaSota.  I

16      understand you don't recognize the jurisdiction of the court or

17      the United States or anything else.  And, practically speaking,

18      you know, I've got a full docket today, I'm not going to hold a

19      contempt hearing.  So if you want to stay seated, you can remain

20      seated.

21           But I'm saying that it is certainly a mark of disrespect to

22      our courtroom deputy, who works very hard here, and it's a mark

23      of disrespect to the court as a whole.  If that's what you want

24      to communicate today, I'm not ultimately the judge that's

25      deciding your case, that's Judge Bredar.  So you can stay seated
```

 1    if you feel like that's the correct thing to do.

 2        All right.  Go ahead, Ms. Davis.

 3            THE CLERK:  Please state your name for the record.

 4            THE DEFENDANT:  Justice.

 5            THE CLERK:  What is your age?

 6            THE DEFENDANT:  Timeless.

 7            THE CLERK:  And what year, just the year, were you

 8    born?

 9            THE DEFENDANT:  I have been born many times.

10            THE CLERK:  Have you read the indictment or has the

11    substance of the charges been explained to you?

12            THE DEFENDANT:  I have read the document that you have

13    represented as an indictment.

14            THE CLERK:  Do you understand the charge?

15            THE DEFENDANT:  The discussion of my understanding of

16    these -- of these claims has been discussed already and I don't

17    have anything further to add.

18            THE CLERK:  Mr. Proctor, are you satisfied that the

19    defendant understands the charge?

20            MR. PROCTOR:  I am.

21            THE CLERK:  You have been charged in Count 1 of the

22    indictment.  What is your plea?

23            THE DEFENDANT:  I have done nothing wrong.

24            THE CLERK:  Thank you.

25            THE COURT:  All right.  Let's take this one step at a

1  time.

2      In terms of Miss LaSota's responses with regard to her

3  name, her date of birth, and her year of birth, does -- I note

4  she is, I've seen her sitting here today, we're all here in open

5  court, does anybody from the government object to me finding

6  that the person with the name, the date of birth, and all the

7  other identifiers associated with this case is the defendant

8  sitting here today and is the person entering a plea?

9          MR. BEIM:  No objection, Your Honor.

10          THE COURT:  All right.

11      Mr. Proctor, are you satisfied that Miss LaSota has

12  adequately, to protect her own rights, adequately identified

13  herself today?

14          MR. PROCTOR:  Yes, sir.

15          THE COURT:  All right.  I also did not hear the words

16  not guilty; however, the substance of what Miss LaSota said

17  would correspond, more or less, to a plea of not guilty.  And so

18  I'm going to take that as a plea of not guilty.  Again, does

19  anyone have an objection to the plea being entered in the form

20  she entered it?

21          MR. BEIM:  No, sir.

22          THE COURT:  All right.  Mr. Proctor?

23          MR. PROCTOR:  No, sir.

24          THE COURT:  All right.  The plea of not guilty has be

25  received, it will be reflected on the docket.

1        And, Mr. Proctor, do you reserve a jury trial?

2              MR. PROCTOR:  Yes, sir.  And a speedy trial, too.

3              THE COURT:  All right.  And what is the estimated

4    length of trial?  Government.

5              MR. BEIM:  Three days.

6              THE COURT:  All right.  Any -- I'll let counsel confer

7    for a moment.

8              MR. PROCTOR:  We're good, Judge.  Sorry.

9              THE COURT:  No worries.

10        Anything you want to add to the Government's suggestion of

11   three days?

12             MR. PROCTOR:  It seems overly optimistic, Your Honor.

13             THE COURT:  All right.  Well, we'll communicate that

14   to Judge Bredar.

15        Where are we with discovery?

16             MR. BEIM:  Your Honor, the Government will be

17   releasing the first production later today.  I cannot get you

18   the exact size, but we anticipate that will be the vast majority

19   of discovery in this case.

20             THE COURT:  All right.  Mr. Proctor, anything you want

21   to say about discovery?

22             MR. PROCTOR:  No, sir.  I don't know what I don't

23   have, so I won't be shy about raising any discovery issues, in

24   the event there are any.

25             THE COURT:  I am certain you will not.

1    All right.  So now, I just need to set pretrial motions
2    deadline from Judge Bredar's chambers.  The pretrial motions
3    deadline is 21 days from today, I believe that's December 15th;
4    is that correct?  All right.  December 15th, 2025.  Obviously,
5    either party can file a motion to extend that deadline.
6           And then the message from chambers is a telephone
7    scheduling and status conference December the 17th at 10 a.m.
8    Once again, that's December 17th, 2025, at 10 a.m.
9           Is there anything else we need to address today from the
10   government's perspective?
11           MR. BEIM:  Not from the government's perspective.
12           THE COURT:  Or from the defense?
13           MR. PROCTOR:  No, sir, there is not.
14           THE COURT:  All right.  Thank you to everyone.
15    Good luck to you, Miss LaSota.  And we are adjourned.
16           (The proceedings concluded at 12:12 p.m.)
17
18                    FTR CERTIFICATE
             I, Kassandra L. McPherson, RPR, do hereby certify that
19    the foregoing is a correct transcript of the audio-recorded
     proceedings in the above-entitled matter, audio recorded via FTR
20    Gold on 11/24/2025, and transcribed from the audio recording to
     the best of my ability and that said transcript has been
21    compared with the audio recording.
22
23                       Dated this 4th day of December 2025.
24                          -/s/
                          _____
25                          Kassandra L. McPherson, RPR
                          Federal Official Court Reporter

**$**

**$100** [1] - 5:21
**$250,000** [2] - 5:16, 5:18

**/**

**/s** [1] - 20:23

**1**

**1** [2] - 5:9, 17:21
**10** [2] - 20:7, 20:8
**101** [1] - 1:24
**11/24/2025** [1] - 20:20
**11:43** [1] - 2:1
**12:12** [1] - 20:16
**15** [1] - 5:15
**15th** [2] - 20:3, 20:4
**16th** [1] - 6:23
**17th** [2] - 20:7, 20:8
**18** [2] - 5:11, 6:18
**1:25-cr-00176-JKB-1** [1] - 1:5

**2**

**2** [1] - 12:17
**2025** [5] - 1:7, 6:24, 20:4, 20:8, 20:22
**21** [1] - 20:3
**21201** [2] - 1:14, 1:24
**25** [1] - 1:7

**3**

**36** [1] - 1:14

**4**

**410** [1] - 1:25
**4th** [2] - 1:24, 20:22

**5**

**5(f** [1] - 12:20

**7**

**7B** [1] - 1:8

**9**

**922(g)(2** [1] - 6:19

**922(g)(2)** [1] - 5:12
**962-4544** [1] - 1:25

**A**

**a.m.** [3] - 2:1, 20:7, 20:8
**ability** [2] - 3:14, 20:20
**able** [2] - 3:9
**above-entitled** [1] - 20:19
**Act** [3] - 6:19, 7:19, 13:10
**action** [1] - 12:25
**activity** [1] - 6:12
**add** [2] - 17:17, 19:10
**address** [3] - 6:15, 7:25, 20:9
**ADDRESS** [1] - 1:17
**ADDRESS-B1** [1] - 1:17
**addressing** [1] - 16:8
**adequately** [2] - 18:12
**adjourned** [1] - 20:15
**adverse** [1] - 12:23
**advise** [2] - 3:1, 3:3
**afford** [1] - 10:24
**age** [1] - 17:5
**Agent** [2] - 1:20, 2:8
**aggressed** [1] - 12:1
**agree** [2] - 6:5, 8:22
**agreeing** [2] - 13:13, 13:17
**agreement** [3] - 3:7, 13:4, 15:2
**ahead** [2] - 15:2, 17:2
**Aided** [1] - 1:22
**alcohol** [2] - 3:15, 4:3
**Allegany** [3] - 13:24, 13:25, 15:7
**Allegany-related** [1] - 13:24
**allegation** [4] - 6:23, 7:18, 9:9,

9:10
**allegations** [1] - 2:21
**alleged** [3] - 8:5, 8:7, 13:8
**allegedly** [1] - 6:25
**alleges** [1] - 3:1
**allow** [1] - 16:8
**Amadeus** [1] - 2:5
**AMADEUS** [1] - 1:6
**Amendment** [9] - 10:10, 10:14, 11:4, 11:6, 11:7, 11:16, 11:18, 11:21, 12:11
**amendment** [1] - 11:7
**AMERICA** [1] - 1:4
**amicability** [1] - 16:14
**ammunition** [5] - 5:10, 6:21, 7:1, 7:2, 9:12
**answer** [4] - 4:21, 10:3, 12:10
**anticipate** [1] - 19:18
**appearance** [5] - 2:9, 2:23, 3:6, 4:19, 9:2
**APPEARANCE/ARRAIGNMENT** [1] - 1:9
**applies** [1] - 7:20
**apply** [2] - 8:4, 15:13
**appoint** [1] - 10:23
**appointed** [5] - 2:14, 11:10, 11:20, 12:14, 12:16
**arraignment** [4] - 2:9, 15:16, 15:21, 15:22
**arrested** [1] - 8:20
**aside** [1] - 3:20
**assessment** [1] - 5:21
**assets** [3] - 9:16, 9:18, 9:20
**Assistant** [1] - 2:6
**associated** [1] - 18:7
**attempt** [1] - 9:14
**attorney** [6] - 10:15, 10:21,

10:22, 10:23, 11:2
**Attorney** [1] - 1:13
**Attorneys** [1] - 2:7
**audio** [4] - 20:19, 20:19, 20:20, 20:21
**Audio** [1] - 1:21
**audio-recorded** [1] - 20:19
**August** [1] - 12:16
**authority** [1] - 3:21
**aware** [1] - 11:15

**B**

**B1** [1] - 1:17
**Bail** [1] - 13:9
**bail** [1] - 13:23
**Baltimore** [4] - 1:8, 1:14, 1:18, 1:24
**based** [1] - 7:20
**become** [1] - 9:15
**BEFORE** [1] - 1:10
**begin** [1] - 6:18
**beginning** [1] - 6:16
**behalf** [1] - 2:7
**Behalf** [2] - 1:12, 1:15
**Beim** [1] - 2:6
**BEIM** [10] - 1:13, 2:4, 5:19, 13:6, 15:17, 18:9, 18:21, 19:5, 19:16, 20:11
**beliefs** [1] - 3:20
**believes** [1] - 12:11
**best** [1] - 20:20
**better** [1] - 4:1
**between** [2] - 10:4, 14:18
**beyond** [3] - 3:25, 7:4, 9:2
**birth** [3] - 18:3, 18:6
**born** [2] - 17:8, 17:9
**Brady** [1] - 12:21
**Bredar** [2] - 16:25, 19:14
**Bredar's** [1] - 20:2
**briefly** [1] - 3:5
**broadcasts** [1] -

7:12
**broadly** [1] - 6:22
**brown** [1] - 7:13
**burden** [1] - 14:9

**C**

**cannot** [2] - 10:24, 19:17
**capable** [1] - 10:3
**case** [12] - 2:4, 3:2, 5:4, 5:8, 5:13, 6:2, 9:21, 11:11, 16:14, 16:25, 18:7, 19:19
**CASE** [1] - 1:5
**cases** [1] - 13:8
**categories** [4] - 6:20, 7:11, 8:20, 13:8
**category** [1] - 6:21
**caveat** [1] - 4:24
**certain** [8] - 2:22, 6:20, 6:23, 7:11, 8:8, 9:20, 13:7, 19:25
**certainly** [4] - 6:2, 13:10, 15:13, 16:21
**CERTIFICATE** [1] - 20:18
**certify** [1] - 20:18
**cetera** [1] - 15:12
**chambers** [4] - 15:11, 15:14, 20:2, 20:6
**change** [2] - 13:14, 13:15
**charge** [2] - 17:14, 17:19
**charged** [7] - 5:9, 8:11, 8:18, 9:11, 9:13, 10:7, 17:21
**charges** [11] - 6:5, 6:7, 6:9, 6:17, 9:5, 9:6, 10:12, 10:19, 12:24, 13:24, 17:11
**charging** [1] - 2:20
**Charles** [1] - 1:14
**choice** [1] - 10:22
**chose** [1] - 14:10
**citizen** [1] - 7:19
**CJA** [1] - 4:14
**claims** [1] - 17:16
**clarify** [1] - 11:1

**class** [1] - 8:17
**clear** [2] - 7:22, 8:15
**clearly** [1] - 9:3
**CLERK** [8] - 17:3, 17:5, 17:7, 17:10, 17:14, 17:18, 17:21, 17:24
**client** [2] - 13:23, 15:10
**Code** [2] - 5:12, 6:19
**communicate** [2] - 16:24, 19:13
**compared** [1] - 20:21
**competency** [3] - 4:15, 5:1, 9:6
**Computer** [1] - 1:22
**Computer-Aided** [1] - 1:22
**concept** [1] - 8:24
**concerns** [1] - 5:1
**concluded** [1] - 20:16
**condition** [2] - 3:16, 4:2
**conditions** [1] - 13:12
**conduct** [1] - 12:14
**conducted** [1] - 3:18
**confer** [2] - 14:13, 19:6
**conference** [1] - 20:7
**conferring** [1] - 14:21
**confuse** [1] - 6:14
**Congress** [1] - 6:18
**connected** [1] - 7:10
**consensus** [1] - 8:25
**consenting** [5] - 13:24, 14:4, 14:6, 14:14, 14:25
**considered** [2] - 16:7, 16:9
**constitutional** [2] - 3:3, 10:9
**contempt** [2] - 12:24, 16:19
**content** [2] - 4:11, 8:3

**contrary** [2] - 8:1, 14:5
**Control** [2] - 6:19, 7:19
**convicted** [3] - 6:4, 9:11, 9:20
**conviction** [1] - 12:25
**copy** [2] - 5:4, 15:12
**correct** [10] - 5:16, 5:18, 12:14, 14:22, 15:1, 15:8, 15:16, 17:1, 20:4, 20:19
**correctly** [1] - 8:12
**correspond** [1] - 18:17
**cost** [1] - 10:24
**counsel** [13] - 2:8, 3:5, 10:17, 10:20, 11:8, 11:10, 11:19, 11:20, 11:24, 12:11, 14:18, 19:6
**Count** [2] - 5:9, 17:21
**count** [1] - 5:9
**course** [7] - 5:1, 6:6, 11:18, 11:20, 12:1, 15:9, 15:11
**COURT** [44] - 1:1, 2:10, 2:15, 3:12, 3:20, 4:10, 5:6, 5:20, 5:25, 6:15, 7:16, 7:24, 8:15, 9:1, 9:24, 10:2, 11:5, 11:14, 12:9, 12:18, 13:7, 13:22, 14:2, 14:17, 14:20, 14:24, 15:13, 15:19, 16:2, 16:4, 16:15, 17:25, 18:10, 18:15, 18:22, 18:24, 19:3, 19:6, 19:9, 19:13, 19:20, 19:25, 20:12, 20:14
**court** [12] - 2:19, 3:6, 3:21, 10:13, 10:18, 10:23, 11:9, 13:19, 14:1, 16:16,

16:23, 18:5
**Court** [6] - 1:23, 2:3, 11:9, 11:22, 13:16, 20:25
**courtroom** [2] - 16:9, 16:22
**Courtroom** [2] - 1:8, 16:5
**cover** [1] - 4:19
**crime** [3] - 3:19, 4:6, 8:18
**criminal** [4] - 2:5, 6:12, 9:4, 9:20
**CRIMINAL** [1] - 1:5
**custody** [1] - 15:5

### D

**date** [4] - 6:23, 8:8, 18:3, 18:6
**Dated** [1] - 20:22
**Davis** [2] - 16:5, 17:2
**days** [3] - 19:5, 19:11, 20:3
**deadline** [3] - 20:2, 20:3, 20:5
**December** [5] - 20:3, 20:4, 20:7, 20:8, 20:22
**deciding** [1] - 16:25
**decisions** [1] - 11:8
**defendant** [4] - 12:21, 14:18, 17:19, 18:7
**DEFENDANT** [22] - 3:11, 3:17, 4:5, 5:5, 6:9, 7:8, 7:21, 8:12, 8:22, 9:22, 10:1, 11:3, 11:12, 11:25, 13:17, 16:13, 17:4, 17:6, 17:9, 17:12, 17:15, 17:23
**Defendant** [1] - 1:15
**defense** [2] - 9:7, 20:12
**defined** [1] - 6:22
**democratic** [1] - 8:25
**deported** [1] - 7:15
**Deputy** [1] - 16:5
**deputy** [2] - 16:9,

16:22
**described** [1] - 11:17
**describing** [2] - 8:13, 8:15
**detained** [1] - 13:21
**detaining** [1] - 13:20
**detention** [16] - 3:6, 3:7, 13:3, 13:5, 13:9, 13:10, 13:13, 13:17, 14:4, 14:6, 14:12, 14:14, 14:23, 14:25, 15:2, 15:10
**determination** [2] - 13:11, 14:11
**determined** [1] - 11:9
**different** [1] - 3:13
**directly** [1] - 4:21
**disagreement** [1] - 3:25
**disagreements** [1] - 8:9
**disappearing** [1] - 7:14
**disciplinary** [1] - 12:25
**discovery** [4] - 19:15, 19:19, 19:21, 19:23
**discuss** [2] - 3:4, 3:5
**discussed** [1] - 17:16
**discussing** [2] - 13:20
**discussion** [2] - 14:18, 17:15
**dismissal** [1] - 12:24
**dispute** [1] - 10:5
**disrespect** [2] - 16:21, 16:23
**distance** [1] - 5:6
**distinguishing** [1] - 10:4
**DISTRICT** [2] - 1:1, 1:2
**District** [1] - 6:24
**DIVISION** [1] - 1:2
**docket** [2] - 16:18, 18:25
**document** [3] - 2:21, 6:14, 17:12

**done** [2] - 8:8, 17:23
**doubt** [2] - 7:4, 14:22
**DOUGLAS** [1] - 1:10
**drugs** [2] - 3:15, 4:3

### E

**early** [1] - 12:16
**easy** [1] - 3:17
**ECF** [1] - 12:17
**effect** [1] - 13:2
**either** [1] - 20:5
**electronic** [1] - 15:9
**enforcement** [1] - 6:11
**English** [2] - 3:23, 4:22
**enter** [1] - 15:22
**entered** [2] - 18:19, 18:20
**entering** [1] - 18:8
**entitled** [1] - 20:19
**entity** [1] - 3:22
**ESQUIRE** [2] - 1:13, 1:16
**essential** [1] - 11:18
**essentially** [2] - 9:14, 9:17
**estimated** [1] - 19:3
**et** [1] - 15:12
**event** [2] - 15:9, 19:24
**evidence** [5] - 12:21, 12:23, 14:10, 14:11, 14:15
**exact** [2] - 11:6, 19:18
**exactly** [2] - 8:23, 12:3
**exclusion** [1] - 12:23
**exculpatory** [1] - 12:20
**exists** [2] - 10:7, 11:16
**experienced** [1] - 4:14
**explained** [1] - 17:11
**extend** [1] - 20:5

**face** [1] - 6:8
**fact** [1] - 15:5
**false** [1] - 12:5
**falsely** [1] - 12:4
**FBI** [2] - 1:20, 2:8
**February** [1] - 6:23
**federal** [3] - 2:22, 15:5, 15:10
**Federal** [1] - 1:23, 20:25
**fell** [1] - 8:17
**felon** [1] - 8:6
**Fifth** [2] - 10:10, 12:10
**file** [1] - 20:5
**fill** [1] - 15:11
**financial** [1] - 12:14
**fine** [2] - 2:16, 5:16
**firearm** [1] - 13:9
**firearms** [6] - 5:10, 6:20, 7:1, 7:2, 8:7, 9:12
**first** [2] - 10:10, 19:17
**Floor** [1] - 1:24
**follows** [1] - 5:14
**FOR** [1] - 1:2
**foregoing** [1] - 20:19
**forfeit** [2] - 9:12, 9:20
**forfeiture** [4] - 9:9, 9:10, 10:5, 10:6
**form** [1] - 18:19
**formal** [1] - 16:2
**forward** [4] - 4:16, 4:20, 4:24, 9:8
**FTR** [2] - 20:18, 20:19
**fugitive** [5] - 5:11, 6:25, 8:6, 8:13, 8:17
**fugitives** [1] - 6:22
**full** [1] - 16:18
**future** [1] - 13:14

### G

**GARY** [1] - 1:16
**Gary** [2] - 1:17, 2:13
**gender** [1] - 8:21
**generally** [4] -

9:10, 9:19, 16:7, 16:9
**genocide** [1] - 7:23
**glad** [1] - 3:12
**Gold** [1] - 20:20
**Government** [6] - 2:7, 5:1, 7:4, 12:19, 13:4, 19:16
**government** [20] - 2:21, 2:25, 3:2, 5:13, 5:16, 7:13, 9:7, 9:12, 9:14, 9:15, 9:18, 9:19, 10:18, 13:9, 14:8, 14:9, 14:12, 18:5, 19:4
**Government's** [3] - 5:22, 14:15, 19:10
**government's** [2] - 20:10, 20:11
**grand** [4] - 2:19, 7:2, 8:7, 8:16
**guilty** [5] - 7:5, 18:16, 18:17, 18:18, 18:24
**Gun** [2] - 6:19, 7:19

### H

**hard** [1] - 16:22
**hear** [5] - 3:9, 3:11, 3:12, 4:22, 18:15
**hearing** [6] - 13:11, 13:16, 13:18, 14:7, 14:23, 16:19
**HEARING** [1] - 1:9
**held** [1] - 13:23
**hereby** [1] - 20:18
**herself** [1] - 18:13
**hire** [2] - 10:22, 10:24
**hold** [2] - 15:6, 16:18
**holding** [1] - 5:7
**Honor** [14] - 2:12, 5:19, 5:24, 12:17, 13:6, 14:19, 15:8, 15:17, 18:9, 19:12, 19:16
**HONORABLE** [1] - 1:10

honored [1] - 12:12

## I

identified [1] - 18:12
identifiers [1] - 18:7
identity [1] - 8:21
impair [1] - 3:14
impediment [1] - 4:9
importance [1] - 16:11
important [3] - 3:3, 10:9, 11:7
IN [1] - 1:1
inaction [1] - 12:1
incarceration [1] - 5:15
includes [1] - 11:17
including [2] - 12:23, 13:8
indeed [1] - 4:25
indicates [4] - 3:23, 9:3, 14:4, 14:5
indicating [2] - 8:2, 16:10
indictment [14] - 2:20, 5:4, 5:8, 5:10, 9:10, 9:13, 10:8, 15:21, 15:23, 15:25, 17:10, 17:13, 17:22
indigent [1] - 11:10
indiscernible) [1] - 2:14
information [1] - 2:25
INITIAL [1] - 1:9
initial [4] - 2:9, 2:23, 4:18, 9:2
inquiry [1] - 12:15
instructions [1] - 12:24
intend [1] - 12:6
intended [1] - 4:8
intention [1] - 8:14
intentions [1] - 7:21
interesting [1] - 11:14
interpret [2] - 4:10, 14:24

invented [1] - 8:24
inverse [1] - 12:6
involving [1] - 13:8
issue [4] - 4:17, 9:6, 10:10, 14:2
issues [5] - 4:14, 4:25, 7:25, 15:4, 19:23
itself [1] - 8:23

## J

Jack [1] - 2:5
JACK [1] - 1:6
Jared [1] - 2:6
JARED [1] - 1:13
JKB-25-176 [1] - 2:6
joined [1] - 2:7
judge [3] - 13:11, 16:7, 16:24
Judge [5] - 1:10, 16:25, 19:8, 19:14, 20:2
jurisdiction [1] - 16:16
jury [6] - 2:19, 7:2, 8:7, 8:16, 12:23, 19:1
justice [9] - 5:11, 6:13, 6:22, 6:25, 8:6, 8:17, 8:22, 8:23, 17:4

## K

Kassandra [3] - 1:23, 20:18, 20:24
kind [2] - 3:16, 4:7
knowingly [2] - 6:25, 7:1
knows [1] - 5:2

## L

language [2] - 3:23, 4:23
LASOTA [1] - 1:6
LaSota [27] - 2:5, 2:13, 2:15, 3:8, 4:17, 4:21, 5:3, 5:7, 5:9, 6:1, 9:9, 10:9, 13:7, 14:4, 14:13, 14:21, 14:22, 14:25, 15:5, 15:20, 15:25,

16:4, 16:7, 16:15, 18:11, 18:16, 20:15
LaSota's [7] - 4:11, 8:2, 9:3, 10:2, 11:15, 12:10, 18:2
laundered [1] - 6:12
law [6] - 2:22, 6:18, 8:5, 10:7, 11:22
Law [1] - 1:17
laws [1] - 8:4
learn [1] - 15:9
least [3] - 3:24, 5:7, 9:5
legal [4] - 7:10, 10:1, 10:4, 10:5
legality [2] - 9:23, 9:24
length [1] - 19:4
less [1] - 18:17
likely [1] - 15:10
list [1] - 7:2
listed [2] - 9:13, 9:17
located [1] - 9:18
Lombard [1] - 1:24
look [1] - 14:3
luck [1] - 20:15

## M

majority [1] - 19:18
manner [1] - 12:22
mark [2] - 16:21, 16:22
marshals [1] - 15:12
MARYLAND [1] - 1:2
Maryland [3] - 1:8, 6:24, 12:21
matter [1] - 20:19
maximum [4] - 3:1, 5:13, 6:1, 6:7
MCGUINNESS [1] - 1:20
McGuinness [1] - 2:18
McPherson [3] - 1:23, 20:18, 20:24
MD [3] - 1:14, 1:18, 1:24

mean [8] - 6:9, 8:10, 8:23, 8:24, 10:3, 11:12, 13:21, 14:3
meaning [2] - 4:8, 4:11
meanings [1] - 7:9
means [3] - 6:13, 8:18, 10:16
medical [3] - 3:16, 15:4, 15:9
medication [1] - 3:15
medications [1] - 4:3
MELISSA [1] - 1:20
member [1] - 4:14
members [1] - 7:9
mental [1] - 4:2
mentioned [1] - 4:3
message [1] - 20:6
met [1] - 14:12
middle [1] - 9:4
might [4] - 3:17, 3:21, 12:3, 12:4
MILLER [1] - 1:10
mind [1] - 13:14
misrepresent [1] - 6:10
misrepresentations [1] - 12:6
Miss [31] - 2:13, 2:15, 3:8, 4:10, 4:17, 4:21, 5:3, 5:7, 5:9, 6:1, 8:1, 9:3, 9:9, 10:9, 11:15, 12:9, 13:7, 14:4, 14:13, 14:21, 14:25, 15:20, 15:25, 16:4, 16:7, 16:15, 18:2, 18:11, 18:16, 20:15
mock [1] - 3:18
moment [1] - 19:7
MONDAY [1] - 1:7
moral [1] - 8:24
morning [6] - 2:4, 2:12, 2:15, 2:16, 2:17, 2:18
MORRIS [1] - 1:20
Morris [1] - 2:8
motion [1] - 20:5
motions [2] - 20:1, 20:2

move [5] - 4:20, 9:8, 10:8, 12:19, 15:15
moving [1] - 15:20

## N

name [4] - 2:12, 17:3, 18:3, 18:6
nature [2] - 6:6, 8:11
necessarily [1] - 6:3
need [3] - 12:14, 20:1, 20:9
news [2] - 7:11, 7:17
next [1] - 3:6
NO [1] - 1:5
NORTHERN [1] - 1:2
note [1] - 18:3
nothing [2] - 8:21, 17:23
NOVEMBER [1] - 1:7
Number [1] - 12:17
number [1] - 2:5
numerous [1] - 12:2

## O

object [1] - 18:5
objection [2] - 18:9, 18:19
obtain [1] - 10:21
obviously [3] - 4:24, 13:25, 20:4
OF [2] - 1:2, 1:4
off-the-record [1] - 14:18
offense [2] - 7:5, 9:11
Office [2] - 1:13, 1:17
Officer [1] - 2:18
Official [2] - 1:23, 20:25
once [1] - 20:8
one [8] - 6:21, 8:5, 8:18, 10:21, 10:24, 13:16, 14:3, 17:25
ones [1] - 13:8
open [1] - 18:4
operations [2] -

6:11, 6:12
opinions [1] - 3:20
opportunity [1] - 15:22
opposed [1] - 8:23
opposition [1] - 14:15
optimistic [1] - 19:12
order [7] - 2:3, 3:7, 13:1, 13:3, 14:5, 15:2, 15:9
ordered [1] - 12:20
organized [2] - 3:19, 4:6
otherwise [1] - 15:1
overly [1] - 19:12
own [2] - 10:22, 18:12

## P

p.m. [1] - 20:16
panel [1] - 4:14
part [3] - 6:19, 11:7, 11:18
participant [1] - 4:5
party [1] - 20:5
passed [1] - 6:18
penalties [3] - 3:1, 6:1, 6:7
penalty [1] - 5:14
pending [1] - 3:6
people [8] - 6:20, 6:21, 7:11, 7:13, 7:22, 8:4, 12:4, 16:8
perfect [1] - 15:13
perhaps [1] - 9:2
person [3] - 8:18, 18:6, 18:8
person's [1] - 8:21
perspective [3] - 5:23, 20:10, 20:11
philosophical [1] - 3:25
philosophizing [1] - 9:1
physical [1] - 4:2
place [1] - 8:19
plea [7] - 15:22, 17:22, 18:8, 18:17, 18:18,

18:19, 18:24
**point** [3] - 4:19, 10:20, 13:25
**policy** [1] - 8:10
**polite** [1] - 16:9
**political** [3] - 3:22, 3:25, 8:10
**portion** [1] - 7:19
**possessed** [2] - 7:1, 7:3
**possessing** [2] - 6:20, 8:7
**possession** [2] - 5:10, 13:8
**possible** [1] - 3:1
**posture** [1] - 14:2
**potentially** [1] - 4:15
**practically** [1] - 16:17
**Present** [1] - 1:19
**presume** [1] - 6:9
**pretense** [1] - 7:10
**pretrial** [2] - 20:1, 20:2
**Pretrial** [1] - 1:20, 2:18
**prevent** [2] - 4:4, 8:6
**previously** [1] - 2:13
**probable** [1] - 8:16
**proceed** [2] - 14:3, 15:10
**proceeding** [6] - 2:24, 3:18, 4:1, 9:5, 10:16, 11:5
**Proceedings** [1] - 1:21
**proceedings** [5] - 3:15, 4:16, 12:24, 20:16, 20:19
**processing** [1] - 4:2
**processing-wise** [1] - 4:2
**PROCTOR** [20] - 1:16, 2:12, 5:24, 12:16, 13:23, 14:16, 14:19, 14:21, 15:8, 15:18, 16:1, 16:3, 17:20, 18:14, 18:23, 19:2, 19:8, 19:12, 19:22, 20:13

**proctor** [1] - 4:13
**Proctor** [14] - 1:17, 2:11, 2:13, 4:25, 7:25, 12:13, 13:15, 13:22, 15:24, 17:18, 18:11, 18:22, 19:1, 19:20
**produce** [1] - 12:20
**Produced** [1] - 1:22
**production** [1] - 19:17
**progeny** [1] - 12:22
**prohibits** [1] - 6:20
**promises** [1] - 12:5
**promptly** [2] - 13:16, 14:1
**property** [4] - 9:14, 9:15, 9:16, 9:17
**prophylactically** [1] - 15:4
**prosecution** [1] - 13:1
**protect** [1] - 18:12
**prove** [3] - 3:2, 5:13, 7:4
**provide** [1] - 15:11
**provision** [1] - 9:16
**purpose** [1] - 2:24
**pursuant** [2] - 6:11, 12:21
**put** [3] - 14:8, 14:10
**putting** [1] - 3:20

## Q

**questions** [1] - 16:5

## R

**racket** [3] - 6:11, 7:9, 12:1
**raise** [3] - 5:2, 9:7, 14:14
**raised** [1] - 4:17
**raising** [1] - 19:23
**rather** [4] - 2:24, 8:1, 8:6, 11:6
**read** [6] - 5:5,

11:3, 11:6, 11:17, 17:10, 17:12
**reading** [1] - 16:2
**reasonable** [1] - 7:4
**reasonably** [1] - 4:13
**receive** [3] - 5:14, 6:3
**received** [2] - 5:4, 18:25
**recognize** [1] - 16:16
**record** [2] - 14:18, 17:3
**Recorded** [1] - 1:21
**recorded** [2] - 20:19, 20:19
**Recording** [1] - 1:21
**recording** [2] - 20:20, 20:21
**referring** [3] - 7:17, 9:22, 9:24
**reflected** [1] - 18:25
**Reform** [1] - 13:10
**regard** [1] - 18:2
**regarding** [1] - 2:22
**regime** [2] - 7:12, 7:22
**related** [2] - 4:15, 13:24
**relay** [1] - 4:25
**release** [2] - 3:5, 5:20
**released** [1] - 13:12
**releasing** [2] - 13:20, 19:17
**relevant** [1] - 11:18
**rely** [2] - 4:25, 7:25
**remain** [6] - 10:11, 11:2, 11:23, 11:25, 16:8, 16:19
**Reported** [1] - 1:23
**Reporter** [2] - 1:23, 20:25
**reports** [1] - 7:17
**represent** [2] - 2:13, 7:10
**representation**

[2] - 3:4, 8:25
**represented** [2] - 10:15, 17:13
**request** [2] - 14:22, 16:12
**required** [1] - 12:19
**requires** [1] - 11:5
**reserve** [1] - 19:1
**resolved** [1] - 13:25
**resources** [1] - 10:22
**respect** [1] - 12:5
**respond** [1] - 16:5
**responding** [1] - 4:4
**response** [9] - 3:23, 4:11, 4:13, 8:2, 8:10, 9:3, 11:15, 14:11, 15:23
**responses** [1] - 18:2
**result** [1] - 12:22
**returned** [1] - 2:20
**reviewed** [2] - 5:4, 15:24
**rightly** [1] - 12:11
**rights** [5] - 3:3, 10:10, 11:23, 12:5, 18:12
**ring** [2] - 3:19, 4:6
**ROBERT** [1] - 1:20
**Robert** [1] - 2:8
**RPR** [3] - 1:23, 20:18, 20:24
**Rule** [1] - 12:19
**run** [1] - 8:19

## S

**sanctions** [1] - 12:23
**satisfied** [2] - 17:18, 18:11
**scenario** [1] - 6:2
**schedule** [1] - 13:16
**scheduling** [1] - 20:7
**scooping** [1] - 7:13
**scope** [1] - 9:2
**seated** [5] - 2:10, 16:8, 16:19, 16:20, 16:25
**second** [1] -

10:23
**see** [3] - 3:7, 5:6, 13:3
**seek** [3] - 9:12, 10:19, 13:9
**seeking** [1] - 13:4
**semantic** [1] - 8:3
**send** [1] - 15:14
**sentence** [1] - 6:3
**Services** [1] - 1:20
**set** [1] - 20:1
**sheet** [1] - 5:17
**shy** [1] - 19:23
**sign** [3] - 13:1, 14:5, 15:2
**silent** [4] - 10:11, 11:2, 11:23, 11:25
**simply** [4] - 13:15, 14:6, 14:14, 15:22
**sitting** [2] - 18:4, 18:8
**situation** [1] - 13:15
**Sixth** [8] - 10:14, 11:3, 11:6, 11:7, 11:16, 11:18, 11:21, 12:11
**size** [1] - 19:18
**Slavery** [2] - 3:19, 6:10
**slaving** [1] - 6:12
**smuggled** [1] - 4:8
**sole** [1] - 5:9
**sometimes** [1] - 12:12
**soon** [1] - 15:11
**sorry** [1] - 19:8
**South** [1] - 1:14
**speaking** [1] - 16:17
**special** [1] - 5:21
**Special** [2] - 1:20, 2:8
**specifically** [1] - 9:24
**speedy** [1] - 19:2
**spot** [1] - 4:14
**stages** [1] - 10:16
**stand** [3] - 16:4, 16:10, 16:12
**start** [2] - 6:16, 7:6
**state** [2] - 13:24, 17:3
**statement** [1] - 10:12

**states** [2] - 9:10, 9:17
**STATES** [2] - 1:1, 1:4
**States** [13] - 1:12, 1:13, 2:5, 2:7, 3:19, 3:22, 5:12, 6:10, 6:19, 7:19, 8:10, 12:20, 16:17
**status** [2] - 6:24, 20:7
**stay** [2] - 16:19, 16:25
**step** [1] - 17:25
**stop** [2] - 3:8, 7:16
**Street** [2] - 1:14, 1:24
**subject** [1] - 13:18
**submit** [2] - 14:7, 15:6
**subsequent** [2] - 11:8, 11:21
**substance** [2] - 17:11, 18:16
**substitute** [2] - 9:16, 9:18
**suggesting** [1] - 12:3
**suggestion** [1] - 19:10
**suggestive** [1] - 4:21
**Sullivan** [1] - 2:6
**supervised** [1] - 5:20
**suppose** [1] - 4:19
**supposed** [1] - 3:18
**Supreme** [2] - 11:9, 11:21
**system** [1] - 7:10

## T

**table** [1] - 2:8
**telephone** [1] - 20:6
**terms** [2] - 7:8, 18:2
**text** [2] - 11:6, 11:21
**THE** [76] - 1:1, 1:2, 1:10, 2:10, 2:15, 3:11, 3:12, 3:17, 3:20, 4:5, 4:10, 5:5, 5:6,

5:20, 5:25, 6:9, 6:15, 7:8, 7:16, 7:21, 7:24, 8:12, 8:15, 8:22, 9:1, 9:22, 9:24, 10:1, 10:2, 11:3, 11:5, 11:12, 11:14, 11:25, 12:9, 12:18, 13:7, 13:17, 13:22, 14:2, 14:17, 14:20, 14:24, 15:13, 15:19, 16:2, 16:4, 16:13, 16:15, 17:3, 17:4, 17:5, 17:6, 17:7, 17:9, 17:10, 17:12, 17:14, 17:15, 17:18, 17:21, 17:23, 17:24, 17:25, 18:10, 18:15, 18:22, 18:24, 19:3, 19:6, 19:9, 19:13, 19:20, 19:25, 20:12, 20:14

**themselves** [1] - 8:19

**three** [3] - 5:21, 19:5, 19:11

**threshold** [1] - 14:12

**timeless** [1] - 17:6

**timely** [1] - 12:22

**today** [20] - 2:16, 2:19, 2:23, 3:15, 4:4, 4:16, 4:18, 4:20, 9:2, 10:10, 10:18, 13:13, 16:18, 16:24, 18:4, 18:8, 18:13, 19:17, 20:3, 20:9

**today's** [1] - 2:24

**Tom** [1] - 2:6

**topic** [2] - 11:13, 13:18

**towards** [1] - 7:22

**tracks** [1] - 4:13

**transcribed** [1] - 20:20

**Transcript** [1] - 1:22

**transcript** [2] - 20:19, 20:20

**Transcription** [1] - 1:22

**transgender** [3] -

7:21, 7:22, 8:14

**trial** [4] - 2:24, 19:1, 19:2, 19:4

**true** [1] - 7:3

**trust** [1] - 4:13

**truth** [1] - 16:11

**trying** [1] - 13:21

**turned** [1] - 8:19

**two** [3] - 10:9, 10:21, 14:3

**type** [2] - 9:1, 9:5

**typically** [1] - 8:17

## U

**U.S** [1] - 1:20

**ultimately** [1] - 16:24

**under** [6] - 7:12, 10:7, 10:10, 10:14, 13:9, 13:19

**UNITED** [2] - 1:1, 1:4

**United** [13] - 1:12, 1:13, 2:5, 2:6, 3:19, 3:21, 5:12, 6:10, 6:18, 7:19, 8:9, 12:20, 16:17

**up** [6] - 5:7, 5:15, 5:20, 5:21, 7:13, 15:5

## V

**vacating** [1] - 12:25

**valid** [1] - 10:6

**various** [1] - 12:4

**vast** [1] - 19:18

**veneer** [1] - 16:13

**versus** [1] - 12:21

**via** [1] - 20:19

**violated** [1] - 8:5

**violation** [1] - 5:11

**violations** [1] - 2:22

**vs** [1] - 1:5

## W

**waive** [1] - 16:2

**wants** [1] - 14:25

**warranted** [1] - 16:14

**ways** [2] - 10:21, 14:3

**whole** [1] - 16:23

**winds** [1] - 15:5

**wise** [1] - 4:2

**wish** [1] - 13:18

**word** [1] - 4:1

**words** [4] - 3:24, 6:2, 11:16, 18:15

**works** [1] - 16:22

**worries** [1] - 19:9

**worst** [1] - 6:2

**written** [1] - 13:1

**wrongly** [1] - 12:12

## Y

**year** [3] - 17:7, 18:3

**years** [2] - 5:15, 5:21

## §

**§** [2] - 5:12, 6:19